IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WALKER DIGITAL, LLC,                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      ) C.A. No. 1:13-cv-00096-GMS
                                        )
WAL-MART STORES, INC,                   )
                                        )
            Defendant.                  )
_____ )


**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COMPLAINT OF PLAINTIFF WALKER DIGITAL, LLC PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Stamatios Stamoulis #4606
        stamoulis@swdelaw.com
Richard C. Weinblatt #5080
        weinblatt@swdelaw.com
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

*Attorneys for Plaintiff
Walker Digital, LLC*

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.  SUMMARY OF ARGUMENT ............................................................................1

III. STATEMENT OF FACTS ..................................................................................2

IV.  ARGUMENT .......................................................................................................9

    A.   Legal Standards.........................................................................................9

        1.   Motions to Dismiss ........................................................................9

        2.   Defendant's Clear and Convincing Burden of
            Proof............................................................................................10

        3.   Patentability Under 35 U.S.C. § 101.............................................11

        4.   The Court Must First Construe Relevant Claim
            Terms ...........................................................................................12

    B.   Defendant's Motion Is Premature .............................................................13

    C.   The '582 Patent Claims Are Patentable Under § 101................................15

        1.   The Machine Or Transformation Test Is Satisfied .......................17

        2.   The Methods Of The '582 Patent Do Not
            Otherwise Claim An Abstract Idea ................................................19

V.   CONCLUSION...................................................................................................20

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F. 3d 1563 (Fed. Cir. 1996) ..................................................... 10

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) ................................................. 10

*Bancorp Servs., LLC v. Sun Life Assur. Co.*, 687 F. 3d 1266 (Fed. Cir. 2012) ................................................................................................... 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 10

*Bilski v. Kappas*, 130 S. Ct. 3218, 3225 (2010)...................................................... 11, 14, 19

*Bird Barrier Am., Inc. v. Bird-B-Gone, Inc.*, No. 09-cv-0418, 2010 WL 761241 (C.D. Cal. Mar. 1, 2010) .......................................................... 14

*CLS Bank Int'l v. Alice Corp Pty. Ltd.*, 685 F. 3d 1341 (Fed. Cir. 2012)......................... 16

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................ 10

*Corning v. Burden*, 15 How. (56 U.S.) 252 (1853) ......................................................... 19

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012) ..................................................................................................... 16, 18

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ...................................................................................................... 18, 20

*Deston Therapeutics LLC v. Trigen Labs. Inc.*, 2010 WL 2773317 (D. Del. July 12, 2010)............................................................................ 12

*Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665 (D. Del. 2010) .................................................................................... 14

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)............................................................. 11

*Diamond v. Diehr*, 450 U.S. 175 (1981)................................................................... 12, 19

*Edge Capture, L.L.C. v. Barclays Bank PLC*, No. 09-cv-1521, 2011 WL 494573 (N.D. Ill. Jan. 19 31, 2011) ........................................................ 14

*Erickson v. Pardus*, 551 U.S. 89 (2007) ......................................................................... 10

*Gottschalk v. Benson*, 409 U.S. 63 (1972)................................................................. 17, 19

*Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F. 2d 1478 (Fed. Cir.1986) .................................................................................. 10

*Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F. 3d 1312 (Fed. Cir. 2008) ....................................................................................... 13

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008)................................................. 12, 18

*Investpic, LLC v. FactSet Research Systems, Inc.*, Civ. No. 10–1028– SLR, 2011 WL 4591078 (D. Del. Sept. 30, 2011).................................. 14

*LML Patent Corp. v. JPMorgan Chase & Co.*, 2:08-cv-448 at 15 (E.D. Tex. Sept. 20, 2010)................................................................. 18

*Markman v. Westview Instruments, Inc.*, 52 F. 3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)................................................... 12

*Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238 (2011) .......................................... 10

*Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 967968 (N.D. Cal. Mar. 21, 2012) ....................................................................................... 11

*Netword, LLC v. Centraal Corp.*, 242 F. 3d 1347 (Fed. Cir. 2001) ................................. 13

*Odd v. Malone*, 538 F. 3d 202 (3d Cir. 2008)................................................... 10

*Oplus Technologies Ltd. v. Sears Holding Corp.*, No. 12–cv–5707– MRP, 2013 WL 1003632 (C.D. Cal. Mar. 4, 2013) ................................ 12

*Panduit Corp. v. Dennison Mfg., Co.*, 810 F. 2d 1561 (Fed. Cir. 1987) ......................... 10

*Phillips v. AWH Corp.*, 415 F. 3d 1303 (Fed. Cir. 2005) ..................................... 12, 13, 14

*Phillips v. County of Allegheny*, 515 F. 3d 224 (3d Cir. 2008)......................... 10

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 12, 2010) ...................................... 14

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F. 3d 859 (Fed. Cir. 2010) ......................................................................... passim

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ....................................................... 10

**Statutes**

35 U.S.C. § 101.......................................................................................... passim

35 U.S.C. § 282.......................................................................................... 10

**<u>Rules</u>**

Fed. R. Civ. P. 12.......................................................................................................... passim

## I.      NATURE AND STAGE OF PROCEEDINGS

On January 16, 2013, Plaintiff Walker Digital, LLC ("Walker Digital") filed a Complaint for patent infringement against Defendant Wal-Mart Stores, Inc. ("Defendant").  (D.I. 1.)  On March 11, 2013, Defendant filed a Motion to Dismiss Complaint of Walker Digital, LLC Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") (D.I. 8), and it relied on the Defendants' Opening Memorandum in Support of Their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants PayNearMe, Inc. 7-Eleven, Inc., and Amazon.com, Inc. in C.A. No. 13-cv-00098-GMS (D.I. 12).   Walker Digital submits this opposition in response to Defendant's Motion to Dismiss.

## II.     SUMMARY OF ARGUMENT

1.      Under the guise of a Rule 12(b)(6) motion, Defendant seeks to invalidate U.S. Patent No. 6,381,582 (the "'582 patent") by alleging it covers abstract ideas.  But the opposite is true. The '582 patent is presumed valid, and – when properly construed – the claims meet both prongs of the *Bilski* "machine-or-transformation" test and do not cover an abstract idea.  Defendant's motion should be denied.

2.      Defendant's Motion to Dismiss necessarily entails claim construction. Therefore, Defendant's motion is inappropriate at this stage in the case and should be denied or treated as a motion for summary judgment and held over until after claim construction.

3.      The '582 patent claims do not cover an abstract idea.  They have specific applications, improve the technologies in the marketplace and are patentable subject matter.

1

### III.    STATEMENT OF FACTS

U.S. Patent No. 6,381,582 (the "'582 patent"), filed on September 29, 1997, claims a method and system for processing payments for remotely purchased goods.  The Abstract states:

> Systems and methods are provided whereby goods can be purchased from a remote seller such as a catalog marketer, and paid for at a local register, such as that of a local retailer.  A ***point-of-sale system*** operable by a local seller processes, in a user-friendly manner, purchase codes identifying remote sellers to enable transactions including payments for both local and remotely purchased goods.   A ***processor*** operable by a remote seller generates data for use by the local seller in receiving and processing a payment for goods purchased from the remote seller.   A ***processor*** operable by a processing merchant permits the processing merchant to facilitate the remote sales and local payments, reconciling the related transactions occurring at the remote seller and the local seller.  Further provided is a process for use by a customer enabling remote purchase of goods with subsequent local payment at a convenient location.

Exh. A at Abstract (emphasis added).[1]

In the "Background of the Invention" and "Summary of the Invention," the patent states:

> There thus exists a need in the art for a retail system and process which provides consumers with the ***vast selection of goods available through catalog marketers***, ***combined with*** the ***flexibility of payment options*** proffered by retail stores. Such a system and process should desirably offer the convenience of home shopping available through the use of catalogs, and the further convenience of flexible payment options at favored retail stores.
>
> * * *
>
> An object of the present invention is to provide a new and improved system and method for facilitating a payment for remotely purchased goods at a local point-of-sale system.
>
> Another object of the invention is to provide a system and method for ***enabling buyers to pay for a catalog purchase without necessitating the use of a credit card or a mailed payment***.

---

[1]  Exhibits cited in this brief are attached to the co-filed Declaration of Richard C. Weinblatt in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Id.* at 3:47-64 (emphasis added).

The patent discloses several exemplary embodiments of a specially programmed computer system for



FIG. 1

implementing the claimed inventions.  *Id.* at 5:27-9:16.  Fig. 1 shows an overview of an exemplary retail system, which includes computer systems.  As shown in the figure, the disclosed system includes hardware.  The hardware includes a retail system 10, a remote seller system 12, a local point-of-sale ("POS") system 14, a remote processor system 16, a buyer system 22, and a plurality of point-of-sale ("POS") terminals 26A, 26B, 26N.  Fig. 2A shows the local POS system 14, which includes a central processing unit ("CPU") and a "[d]ata storage device 30 that has software instructions for controlling the operation of local POS systems in a manner described" in the patent.  *Id.* at 6:7-10.



The remote processor system 16, as shown in Fig. 3A, includes a CPU connected to a data storage device which stores two databases.  "Data storage device 74 further includes software instructions for controlling the

FIG. 2A

operation of remote processor system 16 in a method described" in the patent.

3

The remote seller system depicted in Fig. 4A is substantially identical to the remote processor system 16 shown in Fig. 3A, except the data storage device 122 of the remote seller system 12 includes four databases. *Id.* at 8:5-16. The four databases



FIG. 3A

"are" established and operated to enable remote seller system 12 to track the sale of goods to customers, and the subsequent payment for those goods remitted through local POS system 14." *Id.* at 8:17-21. The data storage device 122 also "includes the software instructions for operating



FIG. 4A

remote processing system 16 in accordance with the process described" in the patent.

Exh. A at 8:21-23.

> In practicing the present invention, preliminary relationships are preferably established between the catalog merchant who operates remote seller system 12, the processing merchant who operates remote processor system 16, and the retail merchant who operates local POS system 14.
>
> * * *
>
> At this time preliminary identification and record-keeping data is exchanged between the parties and entered into the appropriate database records and fields. Information established during this preliminary phase of operation may include: catalog merchant codes, various names, addresses, and telephone numbers, retailer merchant codes, and the like. Similarly, other operating data will have been entered into the databases of the various parties, including for example, customer information (where available), and product and pricing information.

*Id.* at 9:19-42.

Exemplary flowcharts of exemplary programs implemented by the system of Fig. 1 are found in Figs. 5A and 5B. As shown in Fig. 5A, the ordering process begins with a customer receiving catalog information (step 200). The customer contacts the catalog

merchant and provides identifying information (step 200).  In the embodiment described in the patent, "the customer contact with the merchant occurs through the operation of buyer system 22 over the Internet."  *Id.* at 10:4-7.



FIG. 5A                    FIG. 5B

During the contact with the customer, the customer's identifying information includes, for example, name, address and telephone number, and "[p]reliminary analysis may indicate the customer is already registered or established" with the merchant and if the customer is not already registered or established, "the customer data is entered into appropriate fields in customer database 130 (FIG. 4E), and an appropriate customer identified assigned (step 204)."  *Id.* at 7-14.  The exemplary customer database 130 is shown below:

FIG. 4E

Once communications are established between the catalog merchant and the customer, the customer order is taken by the merchant (step 206). In the present embodiment, this is accomplished through the receipt of a conventional electronic order form. . . . In response to the receipt of the order, the catalog merchant generates a purchase number (also known as an order or confirmation number) and a purchase price and transmits both to the customer (step 208).

The customer is queried to determine if he would like to pay for the order at a local retail store (step 210). This query may be in the form of a question on the electronic order form. If the answer is no, a payment is collected in a conventional manner (step 212), for example by electronic or telephonic receipt of a credit card number with payment authorization.

If the customer indicates a preference to pay for the purchase at a local retail store, a list of available stores is provided for his selection (step 214). These stores are selected from amongst those with which relationships have been established, as described above, and again may be provided on the electronic order form. The list of available stores is preferably tailored to the geographic convenience of the customer, which may be determined automatically through the electronic ordering process in a well known manner.

Continuing with reference to FIG. 5B, the customer selection of a local retail store is transmitted to the catalog merchant's remote seller system by the customer's buyer system (step 216), and an order record is entered into order database 124 (FIG. 4B) of the catalog merchant system (step 218). Customer information is copied from or connected by computer-based data links to customer database 130, and the remaining order information is entered into the order database 124 (FIG. 4B).

To facilitate the customer payment to be made at a local retail store, the catalog merchant selects an appropriate processing merchant (step 220), and transmits the order record information to the remote processing system of same (step 222). This order data is used to populate the appropriate fields of merchant order database 78 (FIG. 3C) (step 224) for subsequent use by the processor merchant. The customer may select to print the Internet page (s) identifying and describing the remote seller and the purchased goods for subsequent use at the local store, particularly if these pages include barcodes that can desirably be used in the process below. At this point, the order process is complete.

*Id.* at 10:15-62.

Fig. 6A of the '582 patent shows an exemplary local retail store payment process.

The customer travels to the selected retail store to pay for the order through the local POS



FIG. 6A

system 14 (step 226).  The customer goes to a register and presents order information for the catalog purchase to initiate payment (step 227).    "[T]he customer submits either the catalog itself or the printed Internet page(s) to initiate the payment process."  Exh. A at 11:22-24.    The barcode is scanned into the register (step 228), which provides a corresponding merchant code.    "In alternate embodiments, the customer may submit a code provided by the catalog merchant, or even just the name of the catalog merchant so that the register operator can select and enter an appropriate code."  *Id.* at 11:28-31.

After the barcode is entered into the local POS system, the program uses the product/field code 66 of inventory database 34 to determine which record is to be processed.  *Id.* at 11:32-35.  After identifying the record, the program examines the corresponding price field 70 to determine if the barcode is representative of local goods or a remote seller (steps 232, 234).  *Id.* at 11:35-38.

If the price field indicates a price, i.e. a local good as is the case with records 56 and 60, the price is added to the purchase in a conventional manner (step 236). If the price field returns a "request order code" or similar instruction, then the register operator is informed that the transaction involves a remote seller and further catalog order information is requested.

In the described embodiment, the register operator is prompted to request an order code from the customer (step 238).  As described above,

7

this order code has been provided to the customer from the catalog merchant, and is communicated to the register operator verbally or in paper format (i.e. written or printed barcode format). The order code is entered by the operator into the local POS system (step 240) and both the catalog merchant code and the order code are transmitted to the remote processor system of the processor merchant. In an alternative embodiment, the order price can be encoded into the order code provided by the remote seller, and decoded at the local point-of-sale system by the point-of-sale processor. Such methods for encoding and decoding information are well known in the art.

*Id.* at 11:45-58.

Fig. 6B shows an exemplary processor merchant clearing process. The remote processor system of the processor merchant receives the catalog merchant code and the order code (step 250) transmitted by the local POS system. *Id.* at 11:60-61.

The software queries the merchant order database to determine if the received catalog merchant code and order code match the contents of any single record (steps 254, 256). Exh. A at 11:63-68. If no record is found, the software triggers a "no records



FIG. 6B

match" or similar message is transmitted back to the local POS system (step 256) for communication to the customer (step 258). *Id.* at 12:1-4. But, if a record is found to match, the price from field 106 of the appropriate record of merchant order database 78 is transmitted from the remote processing system to the local POS system (step 260), and "[a] new record with the order information, i.e. order code, catalog merchant code, price paid, and date paid, is entered into order database 32 (step 262). The price is then displayed to the customer for payment (step 264)."[2] *Id.* at 12:5-12.

---

[2] The '582 patent discloses an alternative processor merchant clearing process at col. 12, lines 14-58 and at Figs. 7A and 7B. *See* Exh. A.

As shown in Fig. 6C, the customer submits payment to the register operator of the local POS system (step 270). *Id.* at 12:60-62.



FIG. 6C

In accordance with a feature and advantage of the present invention, the options for such payment are as flexible as those typically available at a local retail merchant. That is, the customer may submit cash, a check, a credit card or other payment account indicator, a payment towards a layaway account, or any payment type acceptable to the local store.

Upon receipt of the payment, the register is appropriately operated and the local POS system is programmed to automatically transmit verification of the payment to the remote processing system of the processor merchant (step 272). The remote processor system enters the date of receipt of the verification into the fulfillment date field 114 of merchant order database 78 (step 274), whereby to indicate receipt of the payment verification. The remote processor system then transmits a verification of payment to the catalog merchant's remote seller system (step 276), initiating fulfillment of the order by the catalog merchant. In the present embodiment, the remote seller system updates date paid field 148 of order database 124 (step 278), automatically initiating a fulfillment process culminating in shipping of the goods to the customer (step 280). Many acceptable automated fulfillment processes and systems are known in the art.

*Id.* at 12:62-13:17. The processor merchant, local retail merchants catalog merchants may reconcile their various accounts and transaction and settle financial payment obligations in accordance prearranged contracts. *Id.* at 13:19-32.

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   Motions to Dismiss

When deciding motions to dismiss under Rule 12(b)(6), courts look at the allegations of the complaint to determine if "enough facts to state a claim to relief that is plausible on its face" are alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007), and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *see also Odd v. Malone*, 538 F. 3d 202, 207 (3d Cir. 2008). Courts also are to "determine, whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008) (quotation and citation omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### 2.   Defendant's Clear and Convincing Burden of Proof

Patent examiners at the U.S. Patent and Trademark Office ("USPTO") are presumed to have properly performed their duties in issuing a patent, including with respect to § 101. *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F. 3d 1563, 1569 (Fed. Cir. 1996); Exh. B, MPEP 6th ed. rev 3 (1997) at Ch. 2106, pp. 335-51. Patents are therefore presumed valid. 35 U.S.C. § 282; *Panduit Corp. v. Dennison Mfg., Co.*, 810 F. 2d 1561, 1570 (Fed. Cir. 1987). Thus, as the Supreme Court held, Defendant must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i LP*, 131 S. Ct. 2238, 2242 (2011). This burden remains with Defendant and Walker Digital never bears the burden of proving validity. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F. 2d 1478, 1482 (Fed. Cir. 1986); *see also Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW,

2012 WL 967968 at *3 (N.D. Cal. Mar. 21, 2012) ("[I]t is not sufficient to show that a type of claim has never been specifically upheld; rather, [Defendant] must demonstrate that the claims fall within one of the exceptions to '§ 101's broad patent-eligibility principles,' [*Bilski v. Kappas*, 130 S. Ct. 3218, 3225 (2010) ("Bilski II")].").

### 3.      Patentability Under 35 U.S.C. § 101

The Patent Act broadly provides that "[w]hoever invents or discovers ***any*** new and useful process, machine, manufacture, or composition of matter, or ***any*** new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101 (emphasis added).  "The Supreme Court recently reemphasized the significance of these broad statutory categories with the broadening double 'any' exhortation . . . ."  *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F. 3d 859, 867 (Fed. Cir. 2010) (citing *Bilski II*, 130 S. Ct. at 3225).  As the Supreme Court has ruled, "Congress intended statutory subject matter to 'include anything under the sun that is made by man.'"  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

There are only three narrow exceptions to the broad patent-eligibility principles of § 101 – "laws of nature, physical phenomena, and abstract ideas."  *Bilski II*, 130 S. Ct. at 3225.  The Supreme Court has never provided clear guidance as to what constitutes an "abstract idea."  *Id*. at 3236 (Stevens, J., concurring).  But given the sheer breadth of § 101, the Federal Circuit has held that a patent claim should not be found to be for an unpatentable abstract idea unless that abstractness "exhibit[s] itself ***so manifestly*** as to override the broad statutory categories of eligible subject matter."  *Research Corp. Techs.*, 627 F. 3d at 868 (emphasis added).  Further, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so

11

abstract that they override the statutory language and framework of the Patent Act."[3]  *Id.* at 869.

The appropriate analysis of whether a claim satisfies § 101 requires viewing the claim *as a whole*.  *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981).  "[I]t is irrelevant that any individual step or limitation of such processes by itself would be unpatentable under § 101."  *In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008) ("*Bilski I*").

### 4.        The Court Must First Construe Relevant Claim Terms

The claims of a patent define the bounds of the invention.  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1312 (Fed. Cir. 2005).  Therefore, in undertaking a § 101 analysis, this Court must first construe relevant disputed terms of the claims.  *Bilski I*, 545 F. 3d at 951 ("claim construction . . . is an important first step in a § 101 analysis").  Claim construction is a question of law for the Court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  "While it is true that claim construction is a matter of law to be determined by the Court, the process for properly construing a patent claim is unsuited for a motion to dismiss."  *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 2010 WL 2773317 at *4 (D. Del. July 12, 2010).

---

[3] When determining whether a patent complies with § 101,

> the task of the Court is to place an analyzed claim in one of two categories:  abstract ideas versus application-specific implementations of abstract ideas.  Patent law renders the former ineligible and the latter eligible.  Indeed, patent law incentivizes innovation surrounding the latter assuming it meets the other criteria of patent validity, e.g., novelty, enablement, etc.

*Oplus Technologies Ltd. v. Sears Holding Corp.*, No. 12–cv–5707–MRP, 2013 WL 1003632 at *8 (C.D. Cal. Mar. 4, 2013).

Claim construction "is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Centraal Corp.*, 242 F. 3d 1347, 1352 (Fed. Cir. 2001). In construing the claims, a court should use intrinsic evidence such as the patent claims, specification and prosecution history, as well as, if helpful, extrinsic evidence such as expert testimony, dictionaries and learned treatises. *Phillips*, 415 F. 3d at 1317-18.

### B.    Defendant's Motion Is Premature

To succeed on its motion to dismiss, Defendant must show by clear and convincing evidence that the USPTO erred in issuing each of the 73 claims of the '582 patent. *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F. 3d 1312, 1314 (Fed. Cir. 2008). However, this Court's inquiry in evaluating a Rule 12(b)(6) motion is limited to the sufficiency of the facts alleged by Walker Digital's complaint – one of which is that the '582 patent "was duly and lawfully issued" – i.e., it is valid (D.I. 1 at ¶ 7). It does not extend to evaluating the merits of allegations raised by a defendant in a motion to dismiss. Yet, that is what Defendant seeks now to do.

The limited record currently before the Court consists of only the complaint and the '582 patent. Nevertheless, before its Answer has been filed or any discovery provided, Defendant wants this Court to dig deep into the merits. It asks the Court to invalidate each of the 73 claims of the '582 patent, which the USPTO said were patentable following over four and a half years of examination, without deference to the patent's presumption of validity, based solely on attorney argument that does not consider the proper construction of the claims or the level of ordinary skill in the art.

Defendant makes no attempt to explain how the claim language would be understood by a person of ordinary skill in the art in light of the intrinsic and extrinsic

13

evidence, as required by *Phillips v. AWH Corp.*, 415 F. 3d 1303 (Fed. Cir. 2005). Defendant also ignores a key Federal Circuit case – *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010). That case held that a claim can only be found unpatentable under § 101 if its abstractness "should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter." *Id.* at 868. That plainly is not the case here.

Under these circumstances, Defendant cannot carry its high burden of proving invalidity in a Rule 12(b)(6) context. The motion is premature. *See Investpic, LLC v. FactSet Research Systems, Inc.*, Civ. No. 10–1028–SLR, 2011 WL 4591078 at *1 (D. Del. Sept. 30, 2011) ("The court declines to address the merits of defendants' arguments under *Bilski v. Kappos*, —U.S. —, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010), in the absence of either discovery or claim construction."); *see also Bird Barrier Am., Inc. v. Bird-B-Gone, Inc.*, No. 09-cv-0418, 2010 WL 761241, at *3 (C.D. Cal. Mar. 1, 2010) (declining to rule on a Rule 12(b)(6) motion because a claim construction analysis is "inappropriate at this stage in the litigation"); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 10-cv-1370, 2010 WL 4698576 at *4 (N.D. Ohio Nov. 12, 2010) ("The record that the Court may consider on a 12(b)(6) . . . is insufficient for the Court to construe the patent claims contrary to plaintiffs' allegations of infringement and rule that it is invalid"); *Edge Capture, L.L.C. v. Barclays Bank PLC*, No. 09-cv-1521, 2011 WL 494573 at *1 (N.D. Ill. Jan. 19 31, 2011) ("judgment on the pleadings as to invalidity under § 101 would be inappropriate"); *Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 670-71 (D. Del. 2010) (citing cases declining to construe claims on a motion to dismiss).

14

To properly construe the '582 patent claims and then apply the appropriate § 101 tests, black-letter Patent Law requires this Court to consider a plethora of intrinsic and extrinsic evidence beyond the four corners of Walker Digital's Complaint.  Consideration of such evidence is not permitted in a Rule 12(b)(6) context and the Court should deny Defendant's motion.

### C.    The '582 Patent Claims Are Patentable Under § 101

The foundation of Defendant's theory involves an oversimplification of the subject matter disclosed and covered by the '582 patent.  Defendant incorrectly argues:

> The claims of the asserted '582 patent recite nothing more than an abstract idea of customer purchasing goods from a remote seller and paying for the goods at a separate local retail store, and in some instances, the remote seller shipping the goods once the customer makes payment, none of which is limited to a specific machine and do not transform an article to another state or thing.

(D.I. 8 at 2); "the recited computers do nothing more than what could be done by a person," (C.A. No. 13-cv-00098-GMS, D.I. 12 at 11); and "[t]he '582 patent claims are not tied to any machine or apparatus."  (*Id.* at 10; *see also id.* at 2 ("At its core, Walker Digital's patent seeks to monopolize the abstract concept of local payment for remote purchases without restriction to any specific application, device, or methodology.").)  In reality, all the claims require a specially programmed computer to implement the invention and to achieve the invention's benefits.  They cannot be done mentally, or by a human being.

Based on its faulty premise, Defendant tries to apply cases – including the Supreme Court's *Bilski v. Kappos* decision – in which the claims at issue required no computer and could be infringed mentally.  Those cases are inapposite.  Moreover,

> nothing in the Supreme Court's precedent, nor in [the Federal Circuit's], allows a court to go hunting for abstractions by ignoring the concrete,

15

palpable, tangible, and otherwise not abstract invention the patentee actually claims. ***It is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception to patent eligibility under 35 U.S.C. § 101.*** Patent eligibility must be evaluated based on what the claims recite, not merely on the ideas upon which they are premised.

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 716 (D. Del. 2012)

(quoting *CLS Bank Int'l v. Alice Corp Pty. Ltd.*, 685 F. 3d 1341, 1351-52 (Fed. Cir. 2012)

(pending *en banc* review)) (emphasis added).

Properly construed and understood, each of the '582 patent claims requires a computer programmed to perform the specific claimed functions. The specification teaches that this computer is not merely an insignificant appendage, or used simply to speed up or automate operations. Rather, the computer is at the very heart of the claimed inventions.

Without the computer, the objectives and advantages that the patent states for the invention would not be achieved. The '582 patent claims a novel and non-obvious computerized method and apparatus for remote sellers to process payments for the sale of goods. A central feature of the invention is the point-of-sale system.[4] The specification of the '582 patent states:

> Referring now to FIG. 1, a retail system 10 is shown including a remote seller system 12 connected to a local point-of-sale (POS) system 14 through a remote processor system 16. These systems are suitably interconnected by data links 18, 20, comprising for example telephone connections or electronic network connections. A buyer system 22 is connected to remote seller system 12 by a suitable data link 24. In the present embodiment data link 24 comprises an Internet connection, for example a conventional world-wide-web browser, established through a telephone line. A plurality of point-of-sale (POS) terminals 26A, 26B, 26n are connected to local POS system 14, for example through a conventional computer data network.

---

[4] All of the independent claims – claims 1, 8, 25, 41, 44, 46, 57, 69, 70, 71, 72 and 73 – recite the feature of a "point-of-sale system."

16

Exh. A at 8:28-40.

The benefits of the claimed inventions are made possible by the use of the expressly disclosed computer system, which implements the claimed steps and elements. Defendant's argument that the '582 patent seeks to preempt all uses of "paying for a remote purchase at a local retail store" bears no weight.   When the '582 claims are properly construed from the vantage point of a person of ordinary skill in the art in light of the relevant intrinsic evidence, it is evident that the claims require a computer processor to perform the claimed steps.

Thus, the '582 patent claims are far from manifestly abstract and do not "wholly preempt" any field of endeavor.   This is not a case in which the claims seek to preempt the use of a mathematical formula, as in *Gottschalk v. Benson*, 409 U.S. 63 (1972), or an economic principle like hedging that a human could perform, as in the *Bilski* cases. Rather, the '582 patent claims methods that must be implemented by a specially programmed computer to perform the steps or elements that the claims recite.   When that is done, the claimed inventions solve a problem and have been widely adopted in successful commercial enterprises – including those by Defendant.

### 1.        The Machine Or Transformation Test Is Satisfied

That the claimed inventions are not unpatentably abstract is confirmed by the "machine or transformation" ("MOT") test, which the Federal Circuit and Supreme Court have recognized to be an important "clue" to patentability.   Defendant misapplies this test by ignoring important claim language.   Under a proper application of that test, each of the '582 patent claims is directed to inventions that meet both the machine and transformation prongs of the test.

Because the claims inherently recite a computer programmed with software configured to receive a code and obtain context information from external sources to enable the completion of a remote sale through a local register, the machine prong is satisfied. *See LML Patent Corp. v. JPMorgan Chase & Co.*, 2:08-cv-448 at 15 (E.D. Tex. Sept. 20, 2010) (holding "the machine prong is satisfied because [the claim] recites a terminal, a computer system, and a database configured to carry out the consumer bank account status search and enable electronic funds transfer communication" (quotation marks omitted) (attached as Exh. C).).

The '582 patent claims also satisfy the transformation prong of the MOT test. The transformation prong of the MOT test is met where the claims "transform[] an article into a different state or thing." *Bilski I*, 545 F.3d at 962. As *CyberFone*, a case relied on by Defendant, notes, the transformation prong may be met by transforming data into "representations" of "physically existing objects." *CyberFone*, 885 F. Supp. 2d at 717 (citing *Bancorp Servs., LLC v. Sun Life Assur. Co.*, 687 F. 3d 1266, 1273 (Fed. Cir. 2012)). The Federal Circuit has found that the transformation of pixels from one kind of image to another will satisfy the transformation prong. *See Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011) (describing *Research Corp.* and noting that "[b]ecause the method required the manipulation of computer data structures (e.g., the pixels of a digital image and a two dimensional array known as a mask) and the output of a ***modified computer data structure*** (a halftoned digital image), the method could not, as a practical matter, be performed entirely in a human's mind" and met the transformation prong.) (emphasis added)).

18

The claims of the '582 patent recite more than an abstract idea. Distinct sets of information, namely order information, local and remote seller information and payment information, are transformed into a request for shipping goods from the remote seller. In addition, claim 1's and 8's "determining," "generating" and "transmitting" steps, claim 25's "generating," "transmitting," "confirming" and "providing" steps, claim 41's "transmitting," "receiving" and "providing" steps further take the claims beyond an abstract idea and into an actual practical application, regardless of whether these and other particular steps of the claim were themselves well-known. *See Diehr*, 450 U.S. at 188-90. These claims, and the claims dependent thereon, accordingly amount to more than a mere passing-through of information and are "sufficiently definite to confine the patent monopoly within rather definite bounds." *Benson*, 409 U.S. at 69 (discussing *Corning v. Burden*, 15 How. (56 U.S.) 252 (1853)). The transformation prong of the MOT test is satisfied.

Moreover, if the Court were to find the MOT test is not met by the '582 patent's claims (it should not), the MOT test is not the exclusive test for determining patentability under § 101. *Bilski II*, 130 S. Ct. at 3227.

## 2. The Methods Of The '582 Patent Do Not Otherwise Claim An Abstract Idea

The inventions claimed in the '582 patent have specific applications, improve the technologies in the marketplace and therefore, are patentable subject matter. *See Research Corp.*, 627 F. 3d at 86 (ruling "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act."). In addition, the Federal Circuit has repeatedly held that – apart from whether a patent's claims satisfy the

MOT – a method claim is not an abstract idea where the method cannot be performed entirely in a human's mind, or by a human using a pen and pencil. *See Cybersource*, 654 F. 3d at 1376; *Research Corp.*, 627 F. 3d at 868.

The claims of the '582 patent – when properly construed – cannot be performed by the human mind alone or by a human aided by a pen and his or her voice as alleged by Defendant. (C.A. No. 13-cv-00098-GMS, D.I. 12 at 11 ("A person can accomplish each of these steps manually by writing down a product identifier and price and verbally communicating that information to a local seller, for example.").) A human, unassisted by the invention of the '582 patent, cannot store codes in a database and electronically apply those codes to remote or local orders entered in a POS system. Necessarily, any sales information generated by a human with a pen or pencil would have to be represented on paper or some other form of media. For this additional reason, the claims of the '582 patent are not abstract ideas.

**V. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Dated: March 28, 2013        STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
     stamoulis@swdelaw.com
Richard C. Weinblatt #5080
     weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

*Attorneys for Plaintiff*
*Walker Digital, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2013, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080